UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael Russell, | ) |
| Plaintiff, | ) |
| | ) No. 19-cv-6688 |
| v. | ) |
| | ) Judge April M. Perry |
| Louis Montes, et al., | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Michael Russell ("Russell"), an inmate at Stateville Correctional Center ("Stateville"), brings this civil rights action pursuant to 42 U.S.C. § 1983. Russell alleges that Defendants Louis Montes ("Montes"), Ryan Kim ("Kim) and Ingrid Kundrotas ("Kundrotas"), all workers at Stateville, were deliberately indifferent to Russell's serious medical needs in violation of the Eighth Amendment. Before the Court are motions for summary judgment filed by Defendant Montes, Doc. 88, and Defendants Kundrotas and Kim, Doc. 91. For the reasons explained below, the Court denies both motions.

**BACKGROUND**

Defendant Montes was at all relevant times employed at Stateville as a sergeant. His main responsibilities as a sergeant were to "make sure all necessary tasks within his assigned cellhouse" were "timely completed, … and to make sure that the safety and security of the prison" was "maintained at all times." Doc. 90-3 ¶ 2. Montes deferred "all medical care and decisions regarding medical care to the medical staff." Id. ¶ 5.

Defendant Kundrotas was at all relevant times employed at Stateville as a licensed practical nurse ("LPN"). Doc. 93-2 ¶¶ 1-2. As an LPN, Kundrotas' job included providing direct

and indirect nursing care to inmates both as an assistant to physicians and independently. Doc. 93-2 ¶ 7. Defendant Kim was at all relevant times employed at Stateville as a registered nurse. Doc. 93-4 ¶¶ 2–4, 6. Kim's job involved many of the same responsibilities as Kundrotas' except that Kim was also responsible for providing clinical supervision and training to nursing staff. Doc. 93-4 ¶ 7.

On April 27, 2018, Russell was housed in a crisis watch cell in Stateville's healthcare unit under observation for suicidality. Sometime prior to noon, Russell awoke to the feeling of excruciating pain in his right ear and what sounded like drums banging loudly in his ear. Doc. 90-2 at 90–92. Russell immediately jumped up and began "hollering" and "beating on the door" of his cell. *Id.* at 92:10-11. A watch officer responded and then went to check with the nurses across the hall from Russell's cell. *Id.* at 92:12–17.

Less than an hour later, Russell spoke to Nurses Kim and Kundrotas for the first time. *Id.* at 96:2–16. According to Russell, he caught their attention as they were waiting at the nurse's station outside of his cell and told them that he had a cockroach in his ear. *Id.* at 97:4–24. Nurse Kundrotas acknowledged that in their first interaction, Russell told her that he had ear pain and had been "telling everybody but nobody pay [*sic*] attention to him." Doc. 93-3 at 25:2–5. According to Russell, Nurse Kundrotas responded that they had just started their shifts and said they needed time to settle down and then would come and speak to Russell. Doc. 90-2 at 97:16–19.

Russell believes that no one came to see him again until approximately two hours later. *Id.* at 98:3. This time, it was a different watch officer. *Id.* at 98:15–23. Russell describes the conversation with the officer as "intense"—he says he was "agitated" and complained that there was a cockroach in his ear that had been there for hours. *Id.* at 99:19–24, 100:1–3. The watch

officer said that he would go and get the sergeant. *Id.* at 100:10–14. Sergeant Montes came to Russell's cell about five minutes later. *Id.* at 100:17–22. Russell explained to Montes what was happening and whom he had already told. According to Russell, Montes replied that he just started his shift and would deal with Russell later. *Id.* at 101:4–13.

After Montes left, Russell began beating and kicking on his cell door and yelling. *Id.* at 101:19–24. It was about ten minutes after Montes left that this attempt to get someone's attention succeeded and the watch officer returned to Russell's cell. *Id.* Russell explained to the watch officer that he was in pain, felt a cockroach crawling on his eardrum, and that was the reason he was "freaking out" and banging on the cell door. *Id.* at 102:3–8. Over the course of the next two hours or so, the same watch officer returned to Russell's cell to check on him four times. *Id.* at 103:1–19, 104:6–15, 105:3–13.

Later that afternoon, staff came around the unit to pass out medicine to inmates. *Id.* at 105:14–17. Russell believes that Nurses Kim and Kundrotas were among the members of the nursing staff who were passing out medicine because they were the nurses on duty. *Id.* at 107:2–8. When they arrived, Russell stuck his arm out of the hole in his door and told them that he needed medical attention. *Id.* at 105:14–19. According to Russell, they said that they were busy but would get around to it. *Id.* at 108:3–8. Russell said that he would not allow the hole in his door to be closed until he was seen and told them again that he was having excruciating pain in his ear. *Id.* at 105:18–22. At this point, the watch officer accompanying the medical staff called over Montes, who came and asked Russell why he was refusing to close the hole in his door. *Id.* at 105:23–24, 106:1–2. Russell responded that he was trying to explain to all of them that he had a medical issue, no one was helping him, and so this was his "cry out for help." *Id.* at 106:2–4. Russell testified in his deposition that Montes responded by pulling out his mace and telling

Russell that if he did not close the hole, he would be maced. *Id.* at 106:4–10. Russell was already in significant pain because of his ear and did not want to be maced, so he complied. *Id.* at 106:12–15.

About an hour later, the watch officer returned to Russell's cell. According to Russell, the watch officer told Russell that the watch officer would go speak with the lieutenant on duty. The lieutenant did in fact arrive after another 30 to 45 minutes. *Id.* at 108:17–24, 109:8–11, 110:2–10. The lieutenant told Russell that he had spoken with the watch officer and asked Russell what was going on. *Id.* Russell told him what had been happening, repeating essentially the same complaints he had made to the watch officers, Montes, and Nurses Kim and Kundrotas. *Id.* at 110:12–16. The lieutenant asked how long Russell had been dealing with the pain in his ear, whom he had told, and how they had responded. *Id.* at 100:17–20. Russell told him, saying that it had been hours that he had been in his cell with the cockroach in his ear. *Id.* at 111:5–6. About 45 minutes thereafter, Nurse Kim came with a watch officer to assess Russell. *Id.* at 111:11–24.

During his initial medical assessment, Russell informed Nurse Kim that he believed there was a cockroach in his ear. *Id.* at 116–117. Nurse Kim asked Russell some follow-up questions then said that they would take Russell out of his cell to have his ear examined. *Id.* About an hour later, Russell was taken out of his cell by Sergeant Montes and the watch officer and brought to the healthcare unit. *Id.* at 117:1–9; 118:2-10. In total, Russell believes that he waited about eight hours to obtain treatment. *Id.* at 72:7–9; Doc. 90 ¶ 15; Doc. 93 ¶ 72; Doc. 99 ¶ 25.

Once at the healthcare unit, Nurse Kim examined Russell's ear and confirmed that there was a cockroach in it. Doc. 90-2 at 60:18–24. Nurse Kim then performed a flushing procedure to remove the cockroach from Russell's ear. *Id.* at 61:8–16. Nurse Kundrotas primarily assisted by holding the basin of water into which the flushing liquid could drain. *Id.* at 119:14-24. Russell

was still feeling some pain and discomfort after the procedure, but his pain was reduced. *Id.* at 62:2–5; 122:6–12. Russell has acknowledged that his treatment likely occurred sometime at or around 6:00 p.m. on the evening of April 27, 2018, the time listed on the medical note taken by Nurse Kundrotas. Doc. 99 ¶ 10.

Russell initiated this suit *pro se* on October 9, 2019. Doc. 1. After amending his complaint, he was allowed to proceed with his claims of deliberate indifference against Defendants Montes, Kim and Kundrotas. Doc. 22; Doc. 25. Russell alleges in his amended complaint that Sergeant Montes and Nurses Kim and Kundrotas were deliberately indifferent to his ear pain and serious medical needs by ignoring his pleas for medical treatment on April 27, 2018. Doc. 25. All Defendants have now filed motions for summary judgment. Doc. 88, 91.

## ANALYSIS

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. When determining what the material facts are, the court considers the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in their favor. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009). Even so-called "self-serving" testimony from the non-moving party, if "based on personal knowledge or firsthand experience," can be "evidence of disputed material facts." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 690–91 (7th Cir. 2010). The court does not weigh the evidence or make credibility determinations at the summary judgment stage. *Id.* If a genuine dispute of material fact exists, those determinations will be left to the jury.

Section 1983 makes those acting under color of law liable for depriving a person of any rights, privileges, or immunities secured by the Constitution. 42 U.S.C. § 1983. Deliberate

indifference "to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment," and is therefore actionable under Section 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation and citation omitted). A claim of deliberate indifference includes two essential components: (i) the prisoner must demonstrate that his medical condition was "objectively, sufficiently serious" and (ii) the prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Additionally, the defendant's indifference must have caused some compensable harm. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (applying the Fourteenth Amendment standard).[1]

The first question thus becomes whether the evidence, viewed in the light most favorable to Russell, shows that Russell had an objectively serious medical condition when there was a cockroach lodged inside his ear. An objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. Defendants do not appear to contest that Russell's medical condition was objectively sufficiently serious, *see* Doc. 89 (declining to argue); Doc. 92 at 5 (conceding), and the Court believes that Russell's condition was one that would obviously require medical attention. The Court therefore finds that the first element of deliberate indifference has been met for the purposes of this summary judgment motion.

Next, the second element: whether the evidence, viewed in the light most favorable to Russell, shows that Defendants had the requisitely culpable state of mind. To demonstrate

---

[1] The Seventh Circuit has held that the deliberate indifference standards under the Eighth and Fourteenth Amendments are "essentially the same" and has cited and reviewed cases under the two clauses interchangeably. *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). The Court employs the same practice here.

deliberate indifference a prisoner need not show that his complaints of pain were "literally ignored." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). Rather, "he must show only that the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, 546 F.3d at 524. This means that the official must have had subjective knowledge of and disregarded an excessive risk to the inmate's health or safety. *Sherrod*, 223 F.3d at 611. Negligence is not enough. *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 513 (7th Cir. 2005). However, circumstantial evidence that officials "recklessly or maliciously allowed" a seriously painful or dangerous situation to fester may suffice. *Id.*

When an inmate relies on a delay in treatment as evidence of indifference, courts look to the facts surrounding the delay to determine whether it constitutes circumstantial evidence that the defendant had a sufficiently culpable state of mind. These facts typically include the delay's duration and consequence, the severity of the inmate's medical condition and amount of pain it caused, the ease of providing treatment, and the reason behind the delay. *See, e.g.*, *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), *as amended* (Aug. 25, 2016) (focusing on duration of delay, its consequences, and whether delay was explicable); *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) ("Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."); *Gil v. Reed*, 381 F.3d 649, 661 (7th Cir. 2004) (focusing on lack of explanation for failure to give prisoner prescribed medication and facts suggesting that reason may have been spite); *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (determining that it is a question for the jury of "whether the plaintiffs were in sufficient

pain to entitle them" to treatment sooner). An "inexplicable delay in treatment which serves no penological interest" can support an inference of deliberate indifference. *Petties*, 836 F.3d at 730.

Finally, with respect to proving compensable harm, not treating pain "*can* be an Eighth Amendment violation, … even if it is a matter of only minutes or hours." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 661 (7th Cir. 2021).

### A. Defendant Montes

Taking the facts submitted by Russell as true and drawing all reasonable inferences in Russell's favor, a reasonable jury could find that Defendant Montes was deliberately indifferent to Russell's ear pain and the risks posed by Russell having a cockroach in his ear. Once a non-medical prison official is alerted to an excessive risk to inmate health or safety, the refusal to exercise the authority of the official's office in aid of that inmate may reflect deliberate indifference. *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011); *see also Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) (A prison "guard who is aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment" is exhibiting deliberate indifference).

Russell has offered evidence which suggests, when viewed in the light most favorable to Russell, that Montes was informed of Russell's medical problem but took no action for many hours. Specifically, Russell testified that he asked Montes for help twice. Their first interaction was approximately four to five and one-half hours before Russell was assessed by Nurse Kim.[2] During that conversation, Russell told Montes what was happening with his ear and Montes

---

[2] These time estimates are based upon Russell's deposition testimony, which for the purposes of this motion the Court accepts as true. Had Montes submitted documentary evidence as to when Montes arrived at work (as opposed to evidence as to when his shift was scheduled to begin), the Court may have concluded that the delay was closer to three hours. *See Scott v. Harris*, 550 U.S. 372, 379–81 (2007) (establishing that courts may only decline to view record in light most favorable to non-moving party where non-moving party's testimony is blatantly contradicted and discredited by essentially conclusive evidence).

responded that he had just started his shift and would deal with Russell later. During the second conversation, Russell testified that he told Montes that he was crying out for help because he was in pain and no one was helping him. According to Russell, Montes responded by taking out his mace and threatening Russell with disciplinary action unless Russell removed his arm from the hole in his door.

An aggressive response to an inmate's request for medical help could reasonably be considered by a jury to be evidence of deliberate indifference. *See Gil*, 381 F.3d at 661 ("[Defendant's] angry and unexplained refusal to give [Plaintiff] his prescribed medication is sufficient to create a genuine issue of fact regarding his state of mind."). So too could the fact that Montes only provided Russell help after Montes' supervisor had spoken with Russell. *See Gayton*, 593 F.3d at 625. Finally, though Montes is not responsible for the delays which began before he was aware of Russell's condition, a reasonable jury could find deliberate indifference based in part on the fact that Montes was informed not just that Russell needed care, but that he had been asking for help for hours. *See Arnett*, 658 F.3d at 755 (holding nonmedical prison officials may be liable for deliberate indifference when they have reason to believe that prison medical professionals are not treating a prisoner). Sergeant Montes did not have the authority to make medical decisions, but he did have the responsibility of maintaining the safety of the prisoners and ensuring that medical decisions were made by the medical staff. Doc. 90-3 ¶¶ 2-5. On these facts, a reasonable jury could find that Montes was deliberately indifferent by not taking Russell for treatment sooner.

Montes argues that he is entitled to summary judgment because Russell has not shown compensable harm. Doc. 89 at 6. However, hours of needless suffering can constitute harm in the failure-to-treat context. *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (quoting *Gil,* 381

F.3d at 662). Russell testified that he was in pain from when he first alerted the first watch officer to when he received treatment. Doc. 90-2 at 112:4–8. He described this pain as a ten out of ten, "hands down." *Id.* at 71:9–12. During that time, Russell attempted to flush his ear out with water himself, but this only "made the roach start crawling faster and that caused more pain." *Id.* at 112:9–24, 113:1–3. Once he was treated by Nurses Kim and Kundrotas and the cockroach was removed, Russell felt less pain and the risk that the cockroach might damage his inner ear abated. *Id.* at 62:2–5; 122:6–12. That is enough evidence for a reasonable jury to find that Russell incurred hours of suffering as a result of Montes' inaction. *See Gayton*, 593 F.3d at 625; *see also Gil*, 381 F.3d at 662 (finding triable issue of fact where inmate "presented testimony as to the pain caused" by his condition and "evidence that within 24 hours" of treatment "he began to feel better").

Moreover, contrary to Montes' assertion, Russell's communication that he was in serious pain and believed there was a cockroach in his ear was enough to put Montes on notice of a risk to an inmate's health and safety. A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). A live cockroach in someone's ear poses an obvious risk of serious harm, and Montes has not presented any facts which would show that Montes did not know this.

Finally, Montes makes much of the fact that Russell's allegations have changed from first alleging a waiting period of several hours to then alleging a waiting period of several days, to then testifying that the waiting period was more like several hours. Doc. 89 at 5. But at the summary judgment stage the court does not weigh the evidence or make credibility determinations. *Berry*, 618 F.3d at 691. That Russell's testimony may contradict his pleadings

and cast doubt upon his credibility is an issue for the jury. For these reasons, summary judgment is denied as to Defendant Montes.

### B. Defendants Kim and Kundrotas

A reasonable jury could also find that Defendants Kim and Kundrotas were deliberately indifferent to Russell's ear pain and the risks posed by him having a cockroach in his ear.[3] A prison medical professional "demonstrates deliberate indifference by failing to treat [an inmate-patient] promptly, thus prolonging the patient's pain, while knowing that the patient may well be in serious pain that is treatable." *Dobbey*, 806 F.3d at 940. If the lack of treatment was based on a medical provider's genuine medical judgment, even one so negligent as to constitute medical malpractice, the provider was not deliberately indifferent. *Petties*, 836 F.3d at 728–31. Conversely, when a decision was not based on a provider's medical judgment but based on malice or administrative convenience (to the exclusion of medical judgment) the Constitution is violated. *Id.*; *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (holding jury entitled to conclude that using administrative convenience and cost to make treatment decisions "constituted a failure to exercise medical" judgment).

Russell focuses his complaints on the nursing defendants' delay rather than the quality of care they ultimately provided. Doc. 97 at 8. Like with Defendant Montes, Russell testified that he asked Nurses Kim and Kundrotas for help twice. Russell has admitted that the first time he

---

[3] Typically, courts assess claims of deliberate indifference one defendant at a time. Here, Nurses Kim and Kundrotas were alleged to have participated in all of the same relevant conversations with Russell and have made no attempts to factually distinguish themselves from one another in their jointly-submitted briefs. Moreover, Russell's testimony suggests that each time he and the nurses spoke, he addressed them collectively and they responded collectively. The only relevant conversation that took place where only one nurse was present was when Nurse Kim initially assessed Russell, but that conversation does not hurt either nurse's chances of achieving summary judgment. The Court therefore assesses the claims against Nurses Kim and Kundrotas, only for the purposes of this summary judgment motion, together.

spoke with the nurses was around 3:00 p.m. Doc. 99 ¶ 24.[4] Russell told the nurses that he was in pain, had a cockroach in his ear, and despite his attempts to secure assistance nobody was helping him. According to Russell, Nurse Kundrotas said that they just started their shifts but would come see Russell later. The second time Russell spoke to the nurses was when Nurses Kim and Kundrotas were passing out medicine. When they got to Russell's cell, Russell stopped them from leaving by sticking his arm out of the hole in his door and repeating that he needed medical attention. Russell refused to remove his arm, Montes was called over, and Russell repeated his cry for help. Based on these allegations, Nurses Kim and Kundrotas could be considered to have had subjective knowledge that Russell may have been in serious pain. The record, when viewed in Russell's favor, also suggests that at no point did Nurses Kim or Kundrotas ask Russell any follow-up questions about his condition, make any medical note of his condition or their treatment plan, or assure Russell that they were working on scheduling his medical assessment.

The record shows that when he did receive his medical assessment, Russell's condition was relatively easy to treat. It also involved some urgency in that it could have worsened over time—so long as the cockroach was in his ear, it might have done damage to his inner ear, impacting his hearing. Nurses Kim and Kundrotas also knew that Russell had already been asking for help and had already waited several hours by the time Russell asked them for help. All of these facts suggest that the nurses' delay in treating Russell's relatively simple, urgent medical condition may have been intolerably long, evidencing their deliberate indifference. Without any justification for the delay, a reasonable jury might find that Nurses Kim and Kundrotas were

---

[4] Russell's deposition testimony places the first conversation with the nurses much earlier. However, he affirmatively states in response to the nurses' statement of undisputed facts that 3:00 p.m. is the accurate time. Pursuant to Rule 56(c), the Court accepts this admission for the purposes of this motion.

deliberately indifferent. *See, e.g.*, *Dobbey*, 806 F.3d at 940–41 (finding summary judgment of deliberate indifference claim precluded where "no reason has been given" for delay in examining patient); *Petties*, 836 F.3d at 733 (prison doctor's treatment delay "without a clear justification" presented question of whether delay was the result of negligence or indifference for jury to decide).

 The nursing defendants argue in their summary judgment briefs that Montes was responsible for any delay because he had to be present when Russell's cell door was opened. However, while Nurse Kundrotas stated in her declaration that she and Nurse Kim informed Montes that Russell was in pain and needed to be seen, she did not provide any information as to when this conversation took place or how close in time it was to when she first spoke with Russell. Doc 93-2 ¶ 6, Doc. 93-3 at 24:14–19. To the contrary, the nursing defendants claim both that the first they heard of Russell's pain was around 6:00 p.m., and also that "a couple of hours" could have passed before the first complaint and treatment. *Compare* Doc. 99 at 8, *with* Doc. 99 at 10. Moreover, Russell's testimony was not that the nurses were attempting to get him treatment but that they twice told him they would get to him later. Drawing all reasonable inferences in Russell's favor, then, Montes was not the sole reason for the delay.

 The statements Nurses Kim and Kundrotas allegedly made to Russell about their shifts having just started and being too busy to see him add to the facts from which a jury could conclude their deliberate indifference. A medical professional may not base treatment decisions on administrative convenience alone. *See Gayton*, 593 F.3d at 623 (reversing summary judgment in nurse's favor where the record revealed that nurse did nothing because it was "approaching the end of her shift and she wanted to let the next nurse handle the situation"); *Elyea*, 631 F.3d at 863 (affirming denial of judgment as a matter of law where doctor's trial testimony revealed that,

at the time a certain medical policy was set up, "there may not have been any real medical reason" for it). And there is no evidence to suggest that Nurses Kim and Kundrotas were exercising their medical judgment in telling Russell that he must wait. They took no intermediate measures to assist him, assess his pain, or document that he was in need of an examination.[5] For all of these reasons, sufficient evidence exists from which a reasonable trier of fact could conclude that Nurses Kim and Kundrotas were deliberately indifferent to Russell's serious medical needs.

In support of their motion for summary judgment, Defendants Kim and Kundrotas argue that delay is inconsequential unless it causes harm, Russell's treatment was timely, and the care they eventually provided was reasonable and appropriate. The Court has already discussed that pain alone can constitute harm sufficient to support a finding of a constitutional violation, and Russell does not dispute that the treatment ultimately provided was appropriate. Russell's sole argument is that the delay was unjustified. The cases cited by the nursing defendants in which short delays were found to not support a finding of deliberate indifference generally involved either involved injuries requiring complex and specialized treatment, or injuries that had already occurred and which were not going to get worse in the time that it took to obtain treatment. *See Langston v. Peters,* 100 F.3d 1235, 1240–41 (7th Cir. 1996) (one-hour delay in getting treatment for rape which had caused no physical injuries); *Murphy v. Walker*, 51 F.3d 714, 717 (7 Cir. 1995) (two-

---

[5] Prison medical professionals are often found to have exercised their professional medical judgment such that deliberate indifference is not supported when there is evidence that they took some intermediate measures to treat the inmate, like by performing a preliminary examination, asking questions about the inmate's pain, or even noting in the inmate's medical record a plan to treat the inmate later. *See, e.g., Gayton*, 593 F.3d at 623 (affirming summary judgment in one nurse's favor where nurse examined inmate in response to her complaints of chest pain, and in other nurse's favor where nurse did not immediately have inmate examined by a doctor but asked inmate about her chest pain, had inmate make arrangements for medication delivery, and put inmate on list to have her vitals regularly checked); *Earl v. Kinziger*, No. 23-3227, 2024 WL 4165077, at *3 (7th Cir. Sept. 12, 2024) (finding that prison dentist's notation in inmate's dental records describing inmate's no-show to dental appointment and resolving to reschedule according to policy was crucially different from a complete lack of treatment).

hour delay to get a broken hand x-rayed, examined, and potentially cast); *Holt v. Doe*, 2017 WL 74767 (W.D. Wis. Jan. 6, 2017) (one hour delay to go to hospital for treatment for broken eye bones); *Newsome v. Godinez*, 2013 WL 5799769 (C.D. Ill. Oct. 28, 2013) (a "few hours" delay in receiving treatment for esophageal problem and ulcer). Here, Russell's problem was not complex and his evaluation and treatment did not require either a specialist or sophisticated equipment. However, there was a risk of the problem getting worse the longer the living cockroach resided in his ear. So, while a jury very well could find that a three-hour delay in treatment was justified given the facts of this case, the Court believes that a reasonable jury could also find in Russell's favor. For these reasons, summary judgment as to Defendants Kim and Kundrotas is denied.

## CONCLUSION

For the foregoing reasons, the Court denies the Defendants' motions for summary judgment.

Dated: January 21, 2025

                                   _____
                                            APRIL M. PERRY
                                            United States District Judge